first. Please call the case. Mr Boyd, you may proceed. Thank you. Good afternoon, Your Honors. My name is Andrew Boyd from the State Appellate Defender's Office, and I represent the defendant, Luis Gonzalez. If it pleases the court and counsel, Your Honor, what this case presents is the question of barely acting like a jerk constitutes the criminal offense of instructing a peace officer. And it's our position, Your Honors, that the answer to this question should be no. No reasonable tribe or fact could have determined here that Luis's absence rose to the level of a criminal offense. And there's two reasons that we believe this to be the case. And the first and the simplest of those reasons is that the state didn't prove the allegations in the charging instrument. In the charging instrument, what the state alleged was that Luis didn't obey Officer Emmett's lawful commands. And the evidence, however, showed that Luis obeyed all of Officer Emmett's commands except for one, and that one command that he didn't obey was one that he was not lawfully obligated to obey. And the second and separate reason we think that this court should reverse is that Luis did not materially impede any investigation into this purported domestic battery. So first, Your Honors, I'd like to explain why the state failed to prove that Luis didn't obey Officer Emmett's lawful commands. And again, the charge against Luis expressly said, expressly alleged, that he refused to obey lawful commands. That's what the state had to prove beyond a reasonable doubt. The evidence presented at trial here showed that Luis did not refuse to obey lawful commands. And the key word here, Your Honors, is lawful. Now, let's go through these commands. When Emmett first encountered Luis, they had a brief conversation. Luis turns to walk up the stairs. Officer Emmett says, come here, come here. Luis doesn't do that. He continues to walk up the stairs. So Luis didn't obey that command. But Luis wasn't under any lawful obligation to obey that command. The reason for that is because he hadn't been seized yet. Somebody who was just being questioned by a police officer. And that's what Officer Emmett's questions were at that point, were just investigatory questions. That's what he testified to. He was just investigating a possible domestic battery incident at that point. Somebody who hasn't been arrested, hasn't been seized, is free to answer the officer's questions, or he's free to walk away. He's free to remain where he was, or he's free to walk up the stairs. Emmett asked Luis what happened. Emmett was only investigating this. There was no seizure at this point. So Emmett's first command wasn't a lawful command. And it wasn't the case that, well, it's lawful in the case that there was something illegal about Emmett saying this. That wasn't how we argue that this was lawful. So what you're doing is you're taking this, come into the house. That's an investigatory process at that point. That's our position. Yes, Your Honor. And under an investigatory process, you are free to disregard or not even engage an officer. That's what the law says. That's this Florida B. Royer case from the Supreme Court way, way, way back in 1983. This is just an investigatory situation at this point. There's been no seizure. There's been no seizure. Okay. Thank you. The second command that Officer Emmett gave Luis occurred when they were both on the stairway landing. Emmett says, Luis, back up. Luis did so. Now it's true, if you watch this video, it's true that Luis didn't back up very far, but there was a stairway railing behind him. He didn't have very far in which to back up, but he did back up. So he obeys the second command. Emmett then commands Luis to move right now. This command, Your Honors, is a little vague. It's a little unclear as to what's happening. As you're going through these commands, you're talking about whether you're lawfully obligated to follow those commands or not. So we've already decided the first one, come back, is not a lawful obligation by your client, correct? That's our position, yes, Your Honor. Okay, now we're going into the second command, right? Which he obeyed, correct. Was that, yeah, but let's talk about lawful. Was that lawful? Did he have to? Did he have an obligation lawfully? Our argument would be no, but that's respectfully our argument would also be that that's beside the point, because he obeyed the command, regardless of whether it was lawful or not. Well, I didn't know. You were saying we're going through each one of those commands, and we've got... Sure, sure, and it's to clarify. I want parallelism is what I want. Sure, to clarify, the only command that we're arguing is not lawful is the first one, and that's the only one that he didn't obey. Okay. At least that's our position. So the rest, you're saying there was a lawful obligation on behalf of your client to follow that command? Our position would be that there hadn't been a seizure at that point. The seizure occurs at the end of the video that was introduced at trial, right about that 6 minute, 20 second mark, roughly, where Officer Evans says, you're under arrest. There's the seizure. So our position would be, to answer Your Honor's question, is that Luis wasn't obligated to obey any of these commands because he hadn't been seized yet, but he did. Other than the first one, he obeyed all these other commands. So he had a cooperative attitude then. Luis acted like a jerk. Okay. I've conceded that in my briefs, and I'll concede that. But we want to draw a line, a clear line, between non-cooperation and breaking the law. And mere non-cooperation, at least before somebody's seized, is not breaking the law. And we've cited case law to that effect in our briefs. So even if we could argue that Luis wasn't fully cooperative, which he was not, we'll just have to concede that he wasn't obligated to do that because he wasn't seized, number one. And more importantly, it wasn't a violation of the law at that point because he hadn't been seized. Mere non-cooperation, and again, the case law that we cited says that mere non-cooperation is not a violation of the law. It's not a violation of the statute of question here, to answer Your Honor's question. So all of these commands, the talk to me right here command, Luis did that. Officer Emmett points down. Luis moves up exactly, precisely to where Officer Emmett told him to move up to. But that was too close for Officer Emmett, so he places his hand on Luis's chest. At that point, Luis either brushes or swats Officer Emmett's hand away, and Luis is placed under arrest. But up until that point, and this is just my initial argument here, up until that point, he hadn't been seized, and non-cooperation was not a violation of the law at that point. So it's our position, in the first part of our argument here, that the trial court's decision to find Luis guilty of obstructing a peace officer where the state expressly alleged that Luis didn't obey Officer Emmett's lawful command, that was a manifestly incorrect decision. No reasonable trial fact could believe on the evidence presented here that Luis did not obey Officer Emmett's lawful command. Let's talk about the landing. Sure. Because the landing seemed to be the precipitating event, right? Or am I  I think that's most, I think that's fair, yes. Okay, so we're on a landing, and you said he was too close for the officer. Well, that's what the officer seemed to believe because he immediately loudly instructed Luis to back up. This isn't just my impression. This is what Officer Emmett said. Yeah, right. It's his testimony. He says, he says, back up, back up. And so, did he back up or did he not back up? He backed up. If you watch, it's our position, if you watch that video, that he backed up. And I believe Officer Emmett also testified that he backed up. So it's our position that he backed up at that point. Now, the second reason that we believe that this court should reverse, even if this court were determined that Luis didn't obey all of Officer Emmett's command, there's another separate reason. That this court should reverse his conviction. And that's so Luis didn't material impede Officer Emmett's investigation. And the case law is very clear. There has to have been a material impediment to an officer performing some sort of authorized duty. There's three factors. The first is the length of time. The second is the officer's familiarity with the defendant. And the third is whether the defendant has actually posed a safety risk. As to the length of the encounter, all due respect to the state, that the state improperly asked this court to go outside the record. The video is very clear from the trial transcripts. The video that was seen at trial ended at the 6-21 March. The court, respectfully, should not consider anything past that. So we've only got about a minute and 40 seconds here of this video. This is a very short interaction between Luis and Officer Emmett. And it's also fair to point out, I think, this court's decision in Mattah talked about a situation that was very different from the one here. In Mattah, we have a situation where it's dark. The officer just stopped the vehicle at night. The area was known for gang activity. They thought maybe somebody had a gun inside this vehicle. None of these things were happening in this case. This is an orderly, well-lit, calm family residence. And no weapons were involved here. So Luis's walking away didn't cause this, if there was a delay, to the extent that there was a delay, Luis didn't cause it. Officer Emmett could have walked past Luis anytime. He ultimately did walk past Luis to go check on the victim. The third factor, we think, is an important one to point out, too. In the case law sense, it has to be an actual risk to officer's safety. Now, again, we circle back to this. Luis obeyed all of officer Emmett's command, except the one that he wasn't obligated to follow. Luis never threatened to harm officer Emmett in any manner. Luis allows officer Emmett to proceed all the way up the stairs. The only time Luis gets physically close to officer Emmett is when officer Emmett tells him to do so. The only time Emmett, excuse me, Luis brushed Emmett's hand away was after the second time that officer Emmett has placed his hands on Luis. Luis didn't do anything that poses an actual risk to officer Emmett's safety. Now, it's true, and we acknowledge this, there was some argument here. Luis argued with officer Emmett that did not constitute a criminal offense. Simply arguing with the police officer without some sort of physical resistance is not enough to satisfy the statute. That's this court's decision in Mattah and the other cases that we cited in our brief. Okay, so, but we do have the officer putting his hand on the chest of your client. Yes. And so, how do you characterize that? I'm not sure it was necessary for the officer to do that. Perhaps the officer subjectively felt threatened at that point. But his subjective feeling is not the issue here. It's actual risk. It's not his subjective impression. And with all due respect to the police, who I absolutely acknowledge have hard jobs, I wouldn't want to do that job. I wouldn't want to be in that situation. It's tough and it's hard and it's potentially dangerous. But the reason that officer Emmett's behavior matters here is because he failed to de-escalate this situation. He failed to what? He failed to de-escalate this situation. And officer Emmett's failure to do that was a big part of the reason that there was a delay. If there was a substantial delay, which we don't think that there was. We don't concede that there was. But to the extent that there was any sort of delay here, it was caused in large part by officer Emmett's failure to de-escalate. And part of that, to circle back to your honest question, was his putting his hand on Louise. And he only did that when Louise had obeyed his command to come here. So your honors, I see that my time is running short. For all the reasons that we've expressed in our briefs here and in oral argument today, we don't think the state has proved the allegations in a charging instrument. We also would argue that Louise did not materially impede officer Emmett's investigation. And we believe that no rational prior fact on these facts could have found Louise guilty of obstructing a peace officer. And we therefore respectfully ask this court to reverse that conviction outright. Any other questions? At the beginning, my question is that when the officer first arrived, there was another man who was his train. It may have been the person who called the police. We don't know. And the other guy's kind of like, yeah, we got this problem. And then he says, didn't the officer ask, where's the victim? And he told the officer that the victim is up these stairs. Yeah, I don't specifically recall, but that sounds correct. Because officer Emmett did testify at one point that he came to understand that the victim was upstairs. And that was part of the reason he was trying to proceed upstairs was to gain access to the victim. That's correct. Okay. Anything else? With regard to factor three, risk. I mean, isn't it kind of axiomatic that domestic violence investigations are not unique in their nature, but fought with risk?  They can be officer Emmett testified to that. And I don't dispute that for a second. What I would argue is that in this case, there was no actual risk. We can talk generally about domestic battery cases certainly being potentially dangerous. But it's our argument that officer Emmett, once he walked into that house, see the orderly nature of that house. Nobody was calling out for help. This gentleman that opened the door, whoever the gentleman was, was not in any sort of distress. During this video, we see some other individuals. We even see a female who I don't know, but may well have been the purported victim of this potential domestic violence. She didn't appear to be any distress. We see some other people in this video. Nobody appears to be in any distress. Nobody's shouting. Nobody's hollering. It's just a very calm and very quiet. Other than the interaction between officer Emmett and Louise, it's a very calm and a very quiet and a very orderly house. Thank you. Thank you, your honors. You'll have time to reply. Thank you, counsel. Mr. Watson. Respond. May I please report, counsel? My name is Max Watson. I represent the state in this matter. This case involves just a single issue, whether the trial court correctly found that the defendant was found guilty beyond a reasonable doubt of obstructing the peace officer. State argues that that decision was correct for the following two reasons. First, the defendant's conduct materially interfered with the officer's ability to investigate and determine if there were any victims in the home when he arrived for a domestic dispute. What's the material? Materiality. Material, you said? Correct.  Yes. So going to those three factors that counsel already discussed, starting with the first one, the length of the delay. Again, this was a relatively brief encounter, but this isn't a static factor where a 10-minute delay creates a material interference and a nine-minute delay doesn't. It also has to take into account what is the nature of the obstructive behavior and the urgency for which an officer would need to respond to it. And again, in this case, we have the officer responding to a domestic dispute. He is informed on the way that there's an ongoing battery going on, that the defendant is intoxicated and has previously been argumentative with police. So going into this situation, the first priority of that officer is to determine whether, one, is there... Is there also, and this is vaguely, but that the battery was committed with a bottle. Was there a weapon involved? It was a threat of a bottle, a threat of being hit with a bottle. A threat of being hit with a bottle. From my recollection, later in the video... Yes, what's your answer? Later on in the video, when the officer's actually speaking with the victim, she had mentioned that it was a beer bottle that had either thrown or had threatened her with. So again, just going back to that first factor with the length of delay, it really has to take into account the urgency of what the officer is responding to. And I think what differentiates this from some of the cases that defendants cited to is, in nearly all those cases, it involves a traffic stop that the officer has initiated, and whether there's some back-and-forth arguments going on, and the nature of that delay, as opposed to this, where the officer was called to that home for a reason. He was invited in to help assist with the domestic dispute that was currently ongoing, and to his information, was an ongoing battery. There was a potential victim somewhere in that house. So his first priority with getting to that house is, where's this victim, are they injured, and how can I control the situation to help alleviate it in any way? So for those reasons, that first factor weighs heavily that this is a material interference or impediment to the officer being able to complete that investigation. As to that second factor, was the... Well, can I change the facts for you, because they're related. What if he's standing in the stairway, blocking the officer from getting to the victim? And that's all we have here. Which, just thinking, which essentially is what did occur at one point. Essentially, that is what occurred at one point, once the officer followed the defendant up the stairs, was he was trying to control him, and was blocked from going on. And that would create... When did he give that command, that first command? The officer... What was that command? Well, that officer first came into the house, asked what's going on, and he did try and de-escalate the situation to some extent. No, no, that isn't my question. What's the command, first command? Was, come down here and wanted to speak to him about the situation. Okay, come down to talk. Yes. Because the defendant was standing... I know, I know. Come on down here. I want to talk. Correct, yes. He didn't say, come down here because I want to rush up and see a  Well, to get control over that situation, and try and... And I think the trial court kind of acknowledged this when it differentiated with traffic stops, as opposed to a situation where an officer is entering the home. The people in that home do not get to just throw their hands up and walk away and ignore the officer. Once that officer comes into the home and is lawfully there, everyone needs to be in agreement and follow those commands that that officer gives. So when the officer came in, after being called there for a domestic reason, and commands someone to come down and talk to me, the defendant doesn't really have an opportunity to say, no, I'm not going to talk to you. This isn't a situation where the defendant is just walking down the street, minding his business, and an officer comes up to him... There's no facts in this case. So is that an impediment of investigation when he says, come down the stairway, and he doesn't? It was one aspect of the entire situation. Would that be sufficient for the charge that was filed against the defendant? I mean, with those facts, if that were the fact, only would that be sufficient? If following that specific, just one command, and the defendant came and wanted to speak with him, then more than likely, there probably wouldn't be. But in this case, under these facts, it did go beyond that. It went far beyond that. I just want to know when the impediment begins. I think that's the first stage of it, and it continues on throughout the encounter on the stairs, and as the defendant is eventually up at the top of the stairs, it continues into him being, after the officer tries to place him under arrest, and the defendant then continues to try and force himself into a room. Then the other aspect, we mentioned, the defense counsel spoke that this was a well-lit home. It seemed like a calm situation. The officer isn't familiar with the layout of this home. He doesn't know what potential weapons are in that house, where that defendant is going. So, that all comes into consideration as to how the officer needs to respond to control the situation, and again, in a traffic stop where, essentially, you can see around the area. You know where those potential defendants are going to be, or someone just walking down the street, as opposed to entering into their home. Well, I find it interesting that the officer proceeds up the stairs after this touch encounter, or chest encounter, with the defendant in back of him. Well... I mean, is that a very safe position for an officer to be in, in this situation, if it's a high volatile situation? As far as placing his hand on the... No. So... Did the officer then proceed to go ahead of the defendant upstairs? Well, that's exactly why, when they were on the stairs, the defendant is several steps up above him, and the officer's testimony was, he was fearful that that defendant was either going to batter him, or push him backwards down those steps. But then, did he go up the steps preceding the defendant? He stepped past the defendant to get to the top of the stairs, and then asked for that defendant to step up with him, so that at least they were on a flat level area, as opposed to being below the defendant on a staircase, where very likely he could have been pushed backwards down the stairs. And I think that goes to the third factor for whether this was... But that occurred at the landing, right? That was the landing at the top of the stairs? So, the stairs... Where is the landing? The stairs went directly up. There was a small landing area, and then they turned, and continued. So, it wasn't at the top of the stairs? Not at the very top of it. It was, you know... And that's when he put his hand on the defendant's chest? No, he placed his hand on the defendant's chest after they had gotten to the top of the stairs. And did the officer go ahead of the defendant upstairs? So, when the officer was initially standing on the landing, the defendant was a couple steps up. He eventually kind of worked his way past him, and was at the top of the stairs at that point. Would you do that if you were in fear of your safety? The fear of his safety was in regards to being pushed backwards down the  So, I think it would make sense that the officer was trying to... He was assaulted from the rear end. Well, I'm sorry, can you repeat that? Yeah. If you're in fear of your safety, you don't want to put a defendant in back of you, do you? Well, he stepped past him, and turned towards him, and got to the top of the stairs. Yeah, but still, he had his back, didn't he, to the defendant? I mean, I don't know. My interpretation of the video was, he kept his chest forward towards the defendant the entire time. What he was doing was trying to get up onto a flat surface of that area. Basically, to get him out of the way. To bring him up to that top area, so that they weren't arguing on a staircase, more so. Yep, okay. Would that go to an impeding, an impediment? If he's blocking you, you get him out of the way, he's impeding you? It's one aspect of it, and it goes to that third factor, which is officer safety. And I think, I'd like to just quote the full, from people we sign up, what the court actually stated was, any behavior that actually threatens an officer's safety, which is what the defense counsel said, or even places the officer in fear of his safety. Is a significant impediment to the officer's performance of his duties. So it isn't just solely an actual risk to his safety, it's whether that officer has a legitimate fear for his safety. So it's in the eye of the beholder. So there is a subjective element to it. That's right. And the trial court found the officer's testimony credible. The body cam footage that was entered as evidence seemed to corroborate everything that he testified to. And his testimony was, he was fearful that the defendant may batter him, or push him backwards down the stairs. So under that aspect, it meets the criteria for that third factor of being a material impediment. Is a material impediment anything that delays in time the investigation of that officer? That's one factor as to it, is the delay in time. It can, a delay can create it. But there's cases where a very brief delay may not. It depends on the facts of each case. And that's why I kind of mentioned, this isn't a static factor where 10 minutes creates a material impediment, but nine minutes does not. It really depends on what is the context of the officer's response, what's the urgency for him to complete his investigation, or whatever his authorized act is. And so in that sense, a small delay in one situation may be a material impediment, but a lengthier delay may not, depending on kind of the facts of  And that's where, when you see... Well, all I'm trying to find out, most of these cases, officer safety's always still there. Well, and I think it's a significant factor. But I'm not asking, do you have facts without that, that it's an impediment? Yes, it was the delay in time for the officer to get in, investigate the situation, determine if there was a victim that was injured. To his knowledge, there was an ongoing battery, and he had not seen the victim at that point. No one had confirmed that no one was injured yet. The defendant confirmed for himself. He said, I didn't touch anyone. See, I'm fine. He showed his arms. But it wasn't until, which goes beyond what was submitted at trial, but when the officer returns back into the house after the defendant was arrested is when he finally is able to ask, is everyone okay? Is anyone injured? He's not able to speak to two different witnesses, one of them being the victim. And I'd just like to backtrack because in defendant's brief, there's arguments made that there is a requirement that there be some type of physical obstruction to meeting the criteria of the charge. I think this is confusing the issue between a resistance charge and an obstruction charge. They're both under the same statute, but the Illinois Supreme Court and people who do basketball seem to plainly explain that obstruction does not require some physical component to it. It can be furnishing a false statement. It can be anything that ultimately impedes that officer. It could be time. It could be time. And the two cases that defense counsel does cite to is Satterbay, which was a resistance charge where they said there was a physical requirement. But again, that was with resistance as opposed to obstruction. And the other case that was cited to was Hilgenberg, which again, that case was written or the opinion was written nearly 20 years before Baskerville. So in that case, I believe I'm correct in saying that the statute at that time did not differentiate obstruction from resistance. So in that opinion, when the court kind of references to the statute as a whole, requiring a physical component, predates the Baskerville opinion where they make clear that on obstruction alone, there is no physical requirement as to that. Are they separate charges? They are separate charges under the same statute. That's 31-1, either A-1 or A-2. And then I can see my time's actually expired. Is there... Do you want to wrap up? Yeah, if I can just briefly conclude. Just for at least foregoing reasons, we ask this court affirm the conviction of defendant. Questions from the bench? No, thank you. Just one. Yeah. Does it matter that the defendant is apparently obviously intoxicated and argumentative, not agreeing or doing what... Does it matter the intoxication? I think it goes to what that officer is... In his response to arriving at that home, it goes to the urgency of the investigation he needs to complete and determinations as to whether there's injured victims. So it goes into the totality of that kind of officer's awareness going into the situation. Does it go to the officer's safety? It very well can. And there was testimony that tended to find that individuals who are intoxicated at these domestic disputes can be a bit more erratic or unpredictable. Thank you, counsel. Thank you. Mr. Boyd, you may reply. Your Honor, the first thing to point out is that opposing counsel and I are apparently differing in our interpretation of the Perkins case law here. It's my position that the Souder Bay case, which is a 2023 case, and the Hildenburg case, which is an older case, but to the best of my knowledge, it's still good law. And it's pretty clear that these cases hold, at least in part, that there has to be a physical act of resistance to establish the offense of obstructing a peace officer. Now, I've cited these cases in my brief and in these cases speak for themselves. But I feel like I need to point this out. I mean, in no way in the world do I concede any sort of agreement with opposing counsel's, respectfully, opposing counsel's interpretation of these cases. I don't think it's correct. Another thing I'd like to point out, the state argues that, well, Officer Emmett's primary goal here when he enters his house is to gain access to the victim. And Luis somehow impeded Emmett from doing that. Look, if what Emmett really wanted to do, if it was his top priority to get to the victim, then go to the victim. Don't stand there arguing with Luis. Don't put your hands on him twice. Don't quarrel with him. Don't insist that he come here right now and talk to me. If your priority as a police officer is the status of the victim, that's fine. That's great. That's your job. Go help the victim. Don't argue with Luis. Officer Emmett caused these problems here, not Luis. Officer Emmett caused this delay. To the extent that there was any sort of an improper delay here, which we are not conceding, it was caused by Officer Emmett. It was not caused by Luis. And again, reasonable people can disagree on things. I understand that. Reasonable people can see a video and see different things. This video does not show Luis blocking Officer Emmett from going up the stairs. It does not show that. It just doesn't. There's no other way that I can say it. All due respect to opposing counsel, I strongly disagree with that interpretation of the video. When Officer Emmett decided that he wanted to go all the way up the stairs, and for whatever his reasons were, he decides he wants to quarrel with Luis on that landing. But when Officer Emmett decided that he wanted to go up those stairs, he did that. Luis didn't impede him. He just didn't do that. That's just not what happened here. For the reasons expressed here, for the reasons expressed in our briefs, we respectfully ask this Court to reverse Luis's conviction. If there's any other questions, I'm more than happy to answer them. No further questions. Thank you for your time, counsel. Thank you, counsel, both, for your fine arguments on this matter this afternoon. It will be taken under revisement. A written disposition shall issue. At this time, the Court will stand in recess.